UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

**JOE HAND PROMOTIONS, INC.,**

        Plaintiff,

   -against-

MICHAEL MCMAHON Individually, and as officer, director, shareholder and/or principal of KAYLEIGH O'CONNOR'S, INC., d/b/a MCMAHON'S PUBLIC HOUSE,

and

KAYLEIGH O'CONNOR'S, INC. d/b/a MCMAHON'S PUBLIC HOUSE,

        Defendants.
-------------------------------------------------------------------

**COMPLAINT**

Civil Action No.

Plaintiff, **JOE HAND PROMOTIONS, INC.,** (hereinafter "Plaintiff"), by their attorneys, LONSTEIN LAW OFFICE, P.C. complaining of the Defendants herein respectfully sets forth and alleges, upon information and belief, as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 47 U.S.C. §§ 605, et seq.

2. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. Section 1331, which states that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

1

3. Upon information and belief, venue is proper in this court because, <u>inter alia,</u> a substantial part of the events or omissions giving rise to the claim occurred within Kings County, which is within the Eastern District of New York (28 U.S.C. § 1391(b) and 28 U.S.C. §112(c)).

4. This Court has personal jurisdiction over the parties in this action. Defendants to this action had or has an agent or agents who has or have independently transacted business in the State of New York and certain activities of Defendants giving rise to this action took place in the State of New York; more particularly, Defendants' acts of violating federal laws and the proprietary rights of Plaintiff, as distributor of the satellite programming transmission signals took place within the State of New York. Moreover, upon information and belief, Defendants have their principal place of business within the State of New York; thus, this Court has personal jurisdiction over Defendants.

## THE PARTIES

5. The Plaintiff is a Pennsylvania Corporation with its principal place of business located at 407 East Pennsylvania Boulevard, Feasterville, Pennsylvania 19053.

6. By contract, Plaintiff was granted the exclusive rights of distribution and public performance as to commercial establishments for the Broner vs. Vargas Match, including all undercard matches and the entire television Broadcast, scheduled for April 21, 2018, via closed circuit television, encrypted "IPTV", cable or via encrypted satellite signal (hereinafter referred to as the "Broadcast").

7. Upon information and belief the Defendant, MICHAEL MCMAHON, resides at 274 Beach 133rd Street, Apt 1A, Rockaway Beach, NY 11694.

8. Upon information and belief the Defendant, MICHAEL MCMAHON, is the officer, director, shareholder and/or principal of KAYLEIGH O'CONNOR'S, INC., d/b/a MCMAHON'S PUBLIC HOUSE, and is doing business as MCMAHON'S PUBLIC HOUSE located at 39 5th Avenue, Brooklyn, NY 11217 (hereinafter referred to as the "Establishment").

9. Upon information and belief the Defendant, MICHAEL MCMAHON, was the individual with supervisory capacity and control over the activities occurring within the Establishment on April 21, 2018.

10. Upon information and belief the Defendants, MICHAEL MCMAHON and KAYLEIGH O'CONNOR'S, INC., received a financial benefit from the operations of MCMAHON'S PUBLIC HOUSE, on April 21, 2018.

11. Upon information and belief, Defendant, MICHAEL MCMAHON, was the individual with close control over the internal operating procedures and employment practices of MCMAHON'S PUBLIC HOUSE on April 21, 2018.

12. Upon information and belief, Defendant, MICHAEL MCMAHON, was present at the Establishment during the exhibition of the Broadcast on April 21, 2018.

13. Upon information and belief, Defendants, MICHAEL MCMAHON and KAYLEIGH O'CONNOR'S, INC., authorized the exhibition of the Broadcast at the Establishment on April 21, 2018.

14. Upon information and belief, Defendants, MICHAEL MCMAHON and KAYLEIGH O'CONNOR'S, INC., received a commercial benefit by not paying the commercial licensing fee to the Plaintiff for the Broadcast and obtaining same through alternative means.

15. Upon information and belief, the Establishment known as MCMAHON'S PUBLIC HOUSE had an estimated fire code occupancy of 201-300 people on April 21, 2018.

16. Upon information and belief, the Defendant, KAYLEIGH O'CONNOR'S, INC., d/b/a MCMAHON'S PUBLIC HOUSE, is a business entity, the exact nature of which is unknown, having its principal place of business at 39 5th Avenue, Brooklyn, NY 11217.

17. Upon information and belief, the Defendant, KAYLEIGH O'CONNOR'S, INC., is a domestic corporation that was formed and is licensed to do business in the State of New York and was doing business as MCMAHON'S PUBLIC HOUSE.

## COUNT I

18. Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs "1" through "17", inclusive, as though set forth herein at length.

19. By contract, Plaintiff was granted the right to distribute the Broner/Vargas program (this includes all undercard bouts and the entire television broadcast) scheduled for April 21, 2018 via closed circuit television and via encrypted satellite signal. Said event originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal (hereinafter referred to as the "Program").

20. Pursuant to the contract, Plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to publicly exhibit the Program to their patrons.

21. Plaintiff expended substantial monies in consideration of the aforementioned agreement to transmit the Program to those entities in the State of New York, which in turn, entered into

4

agreements with Plaintiff to exhibit the Program to their patrons.

22. In order for anyone to obtain the Broadcast through a website intended for private, non-commercial viewing, an individual purchaser would be provided with terms of service which specifically provide for **non-commercial, personal use only.**

23. Upon information and belief, with full knowledge that the Program was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agent, servant, workmen or employees unlawfully intercepted, received and/or de-scrambled said satellite signal and did exhibit the Program at the above-captioned address at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.

24. Upon information and belief, Defendants and/or their agent, servant, workmen and/or employees intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's Broadcast, which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems. There are multiple illegal and unauthorized methods of accessing the Broadcast, including but not limited to the traditional ways of pirating a broadcast (1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment, de-crypt, unscramble and receive the closed circuit, "IPTV", cable or satellite Broadcast; (2) commercially misusing cable or satellite by registering same as a residence when it is, in fact, a business; or (3) taking a lawfully obtained box or satellite receiver from a private residence, into a business. Recently emerging over-the-top "OTT" technologies, used for the delivery of film and TV content via the internet, such as (1) Broadband or internet broadcast; and/or (2) Live Social Media Streaming ("Nano-Piracy") are additional methods in which pirated material can be obtained without requiring users to subscribe to a traditional cable or satellite pay-tv service such as

Comcast, DIRECTV or Time Warner Cable and are readily available to anyone with a Smartphone. The misuse of OTT technology can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world. Each of the above described methods would allow Defendants to access the Broadcast unlawfully and without Plaintiffs authorization. Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the Broadcast. However, it is logical to conclude that Defendants utilized one of the above described methods or another to intercept and exhibit the Broadcast without entering into an agreement to obtain it lawfully from Plaintiff, the legal rights holder for commercial exhibition.

25. 47 U.S.C. §605 (a) prohibits the unauthorized reception and publication or use of communications such as the transmission for which plaintiff had the distribution rights thereto.

26. By reason of the aforementioned conduct, the aforementioned Defendants willfully violated 47 U.S.C. §605 (a).

27. By reason of the aforementioned Defendants' violation of 47 U.S.C. §605 (a), Plaintiff has a private right of action pursuant to 47 U.S.C. §605.

28. As a result of the aforementioned Defendants' willful violation of 47 U.S.C. §605 (a), Plaintiff is entitled to damages in the discretion of this Court, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii) of up to $110,000.00 as to each Defendant.

29. Pursuant to 47 U.S.C. §605, Plaintiff is also entitled to an award of full costs, interest and reasonable attorney's fees.

## VI. <u>REQUEST FOR INJUNCTIVE RELIEF</u>

30. Plaintiff realleges the allegations contained in the foregoing paragraphs of this

Complaint and incorporates such allegations as if fully set forth herein.

31.     Plaintiff further alleges that unless restrained by this Court, Defendants will continue to receive, intercept, transmit, and exhibit its programming, illegally and without authorization, in violation of 47 U.S.C. §605.

32.     The violations of 47 U.S.C. §605 set forth above have caused and will continue to cause Plaintiff irreparable harm.

33.     Plaintiff cannot practically determine the loss of subscribers and lost revenues resulting from Defendants' unlawful conduct. In addition to diminishing Plaintiff's revenues, Defendants' unlawful conduct injures Plaintiff's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming, thereby impairing Plaintiff's ability to enhance its future growth and profitability.

**WHEREFORE**, the Plaintiff requests that judgment be entered in its favor and against the Defendant, *jointly and severally,* granting to Plaintiff the following:

(a) Declare that Defendant's unauthorized exhibition of the April 21, 2018 Broner/Vargas Program**,** violated the Federal Communications Act and that such violations were committed willfully and for purposes of Defendants' direct or indirect commercial advantage or for private financial gain**,** as Defendant advertised and subsequently displayed Plaintiff's Broadcast.

(b) On the first cause of action, statutory penalties in an amount, in the discretion of this Court, against Defendants, *jointly and severally*, for a recovery between $1,000 and $10,000 as to each Defendant pursuant to 47 U.S.C. §605 and enhanced damages

of up to $100,000.00 for each defendant, *jointly and severally*, for their willful violation of 47 U.S.C. §605; and

(c) An injunction prohibiting defendants from receiving, transmitting, and exhibiting Plaintiff's programming.

(d) Attorney's fees, interest, costs of suit as to each Defendant pursuant to 47 U. S. C. § 605 (e)(3) (B) (iii); and

Dated: August 16, 2019
Ellenville, New York

**JOE HAND PROMOTIONS, INC.**

By: /s/Alexander Z. Lonstein
ALEXANDER Z. LONSTEIN, ESQ. (AL7381)
Attorney for Plaintiff
LONSTEIN LAW OFFICE, P.C.
190 South Main Street: P.O. Box 351
Ellenville, NY 12428
Tel: (845) 647-8500
Fax: (845) 647-6277
Email: Legal@signallaw.com
*Our File No. JHP18-03NY-03*